Your Honors, Ferdow Storti on behalf of Mr. David Andrew Gonzalez. May it please the Court. Your Honors, this case presents a similar issue to the one that was just argued. And I'm just going to briefly address the issue because I think Ms. Newman adequately addressed our objection with respect to the government's request for judicial notice, which has similarly been filed in this case. The ability that we would have had at the district court level to expand on this record, like in Mr. Borges Martinez's case, is similar. At the time of his deportation, Mr. Gonzalez was less than 21 years old, and his parents were long-term legal residents. He had been brought to the United States by his parents when he was three months old, and at the age of 17 he sustained his conviction. At the time of his deportation hearing, he was 20 years old, and his parents, had they become citizens prior to the conclusion of the deportation proceeding or even after, and if he'd had an opportunity to appeal to the BIA, it would have made a tremendous difference because he would have had an immediately available visa. And under the same provision that was cited earlier, which is 1151b2a1, he would have had an immediately available visa as the child of citizen parents. I just want to focus your attention for a minute on the sort of fundamental question on the due process part. Now, as I understand what happened here is that the INS elected to deport him based on the administrative process, correct? That's correct, Your Honor. And as a result of that process, he's not entitled to any hearing. It's an immigration officer, not an IJ, that makes that determination, determines that he qualifies for administrative process. That's correct, Your Honor. But he has the right to petition for judicial review to us. That's correct, Your Honor. Correct? That's absolutely correct, Your Honor. So the argument here is that that immigration officer had an obligation to inform him of relief under 212H. That's correct, Your Honor. And that's all based on St. Cyr, correct? No, Your Honor. That's actually the ‑‑ if I can create a little bit of a setting for your question, because I think that what you've indicated is absolutely correct. In 1994, in January, when Mr. Gonzales sustained his conviction, at that time the available means of a deportation proceeding was through an immigration hearing in front of an immigration judge. But he was also at that time eligible for 212H relief. 212H relief. At the time he entered his plea. Yes, Your Honor. Right? Yes, Your Honor. So in other words, the next day, if they had initiated deportation ‑‑ He would have gone in front of an immigration judge. And he could have applied for 212H relief. And the immigration judge under the CFR, which is, I think at the time, was CFR 2‑‑ of his potential relief from deportation, which in this case would have been 212H. 212H. So he had an obligation to inform him of his ‑‑ Yes, Your Honor. Okay. So what happens, though, instead of ‑‑ he gets sent to prison, and he's there for I don't know how many years, four years? Less than that, Your Honor. Four years, whatever it was. Okay. He gets out, and they initiate these proceedings against him. That's correct. He's administrated procedures because the law has changed. That's correct, Your Honor. Also, under the law, he was not eligible for 212H relief. Absolutely. And that change occurs on September 30th of 1996 with the enactment of the IRERA, which is the Illegal Immigration Reform and Immigrant Responsibility Act. And we know later on from St. Cyr and other cases that Congress couldn't apply, take away the right for 212H relief. In fact, 212H relief still exists today. It doesn't exist in the context of the administrative expedited removal proceedings. That's because Congress took away that right. In IRERA, they did, Your Honor. And our position is that ‑‑ Was it any different than what happened in St. Cyr? It's not. It's just that you're in a different kind of ‑‑ Exactly. And the analysis, you know, you're in a different sort of venue. Exactly. It's just a different statute, and the same retroactive analysis that was applied in St. Cyr should be applied to the present statute. And when you look at the enacting provision that the government relies on as the basis for trying to say that Congress expressed and unambiguously expressed its intent to retroactively apply this provision, when you compare the language from this statute to the language in St. Cyr, it's indistinguishable. Okay. Now, let me ask you this. In our ‑‑ is your argument that the immigration officer, because we're in this unique venue, that the immigration officer was required to inform him that he could raise a retroactivity argument, or is your argument that the immigration judge was just simply required to tell him of the availability of 212H relief? Your Honor, it's actually neither. Because if you look at the CFR which mandates the immigration judge in the context of a hearing, that responsibility is not placed on the immigration officer. So in terms of a new disability that was created by the expedited removal proceeding, this was an additional new disability that was created by the enactment of 212H. You mean having an immigration officer required an immigration judge? No, Your Honor. I think I'm not making my distinction clear. The distinction is under the CFR, which is 8 CFR 242.7, it mandates an immigration judge in the context of a hearing to advise someone of their apparent eligibility for relief from deportation. However ‑‑ Well, why can't ‑‑ I mean, irrespective of whether ‑‑ why can't you make a ‑‑ why isn't there a due process obligation for the immigration officer?  We're in this new little forum that Congress created to expedite the removal of certain aggravated felons. After 1996, on September 30th of 1996, as Your Honor pointed out, when provision B5 of 1228 went into effect, the person became ineligible for any form of relief from deportation. So mandating the immigration officer to have that responsibility wouldn't have made any difference because if he was entitled to that proceeding, he would have not been entitled to any relief therefrom. But what's the case we ‑‑ Judge Fernandez, what is the case I'm thinking of? Leon Paz. Yes, Your Honor. Leon Paz. So his waiver ‑‑ In Leon Paz, we said that the I.J. was required to tell the applicant of the availability of 212 relief. And we basically just applied St. Cyr. And the same analysis ‑‑ I mean, I'm just trying to make sure I understand. I understand what you're saying is that in this context, in this new forum, is that the immigration officer, even though there is no regulation that deals with an immigration officer, but that the immigration officer in this context has had an obligation to inform Gonzales that he had a right to apply for 212H relief? That's not correct, Your Honor. Technically, the immigration officer did not have that obligation under the CFR. And the reason I want to make that distinction clear is because when you apply the ‑‑ Why do you want to make that distinction? I don't understand. Because it's very important that that distinction be made. Because the analysis in St. Cyr and in Landgraf is that you look to two things to see if the statute is being applied impermissibly on the individual. And the first thing you look to in the context of ‑‑ Well, I'm prepared. Let's just accept that it does. It does have those ‑‑ Right. So I'm trying to get you ‑‑ I'm trying to understand, you know, we're dealing with an immigration officer who at the time the law had changed. Right. Okay. Now, why doesn't, if you just apply St. Cyr and Leon Paz, why don't those cases, you know, basically say that the immigration officer had an obligation to tell him of availability of 212H? Irrespective of whether or not it was in the regulations or in the statute or anything else. Your Honor ‑‑ I think what Judge ‑‑ I may not be making myself clear. Well, it doesn't matter what the regulations say. Right. I think he's saying it's a matter of due process. Did he have that obligation? I believe it's a matter of due process he did. And I'm sorry because my focus is in the context of the regulation in terms of what the regulation said. But I thought even in Leon Paz that they were referring to the regulation in terms of ‑‑ Well, but the procedural posture there is different in Leon Paz. It was an immigration ‑‑ it was a full‑blown hearing. Absolutely. It was a regular hearing before an IJ. That's correct, Your Honor. Mr. Gonzales did not have that. He had this ‑‑ they used this special administrative proceedings to remove him from the country because he was an aggravated felon. That's correct, Your Honor. You know, whatever that category of aggravated felon was. And had he been given a hearing, he would have been entitled to all of that. And with respect to ‑‑ I think that that goes to the waiver issue. And in the context of the waiver issue, when you have a hearing and you're not advised, in the context of where you don't even get the hearing, there's no question that in the St. Cyr retroactivity analysis that that is a significant disability that's now been imposed that didn't exist at the time of the conviction. And so in the context of the retroactivity analysis, that distinction has a different significance than it does in the context of the waiver analysis. In the waiver analysis, there's no question that someone who's not even given the hearing where someone would have been required to advise him of his apparent eligibility, when they waive their right to judicial review, that that waiver is not considered an intelligent waiver. And there's a long line of cases from the circuit that say that when that's the case, that due process has not been comported with. The analysis goes one further step. The first step is, did Congress intend for that provision to apply retroactively? It's clear from St. Cyr that it did not. And if you look at footnote 43 in St. Cyr, the court cites to umpteen provisions of immigration law that show when Congress clearly intends and when it doesn't. So when you get to the next part is, did Mr. Gonzalez suffer a new disability as a result of these new statutes? The answer is also clear. He would have been entitled on the date of his conviction, and he was not entitled on the date of his deportation as a result of that provision potentially applying retroactively to him. That brings the analysis out of the eligibility realm and into the prejudice realm. And in the prejudice realm, the new issue that's been brought out is arguably the issue of the visa bulletin and whether or not Mr. Gonzalez would have been available. But the traditional prejudice analysis has always been the extreme hardship analysis in the context of age relief. And in a long line of cases going through R.C. Hernandez, Miro, Inclan, Arrieta, this case is absolutely on all fours with Arrieta, because if you look at the provisions that were significant to the court in Arrieta, which were in R.C. Hernandez the court found that if it's a financial hardship, that that's kind of part and parcel of deportation in the context of someone being removed from the country. But the relocation of the family, the court found that that was somewhat important but not dispositive. In Arrieta, the court notes some different pieces of some different factors that are much more significant and much more central to extreme hardship. And one is the preservation of the family unit. And in this context, there's a thoroughly developed record with respect to all of or at least most of Mr. Gonzalez's siblings submitting declarations, his mother and his father submitting declarations. Also, with respect to the issue of the visa bulletin in Mr. Gonzalez's father's declaration, he unequivocally states that had he been notified of any means of trying to have his son remain in the country, that he would have taken action, whether it required becoming a citizen, whether it required filing an I-130. They were not advised that there was any possible means available to them. And had they been so advised, they would have taken that action. Also, on the extreme hardship component, Mr. Gonzalez's mother was his best friend. He was her confidant. He had a very special relationship with her. He had a very special relationship with all of his siblings. And he was the cornerstone of the family, not just in assisting his father financially, but through significant and critical emotional support for his younger siblings. He, like Mr. Arrieta, helped raise his younger siblings as a result of their family circumstances. He was also one of the first children that had gone through the public school system, and therefore he was his parents' connection to American culture because he spoke English. And also they relied on him largely because of his experience, his age, and the fact that he provided so much emotional support for everyone else in the family. Your Honor, I'd like to save the rest of my time for... Isn't it wonderful how simple all of this is? You know, it affects the lives of so many people. A lot of them appear in pro per, a lot of them appear with non-lawyers. It's kind of a travesty, isn't it? Well, let me begin with, may it please the Court, Eric Silber on behalf of the United States. But I think what's important... We'll waive the interdict. What's important, I think, here to look at... What I think is important to look at, I will concede that immigration law is very complex, and it is a difficult area of the law, but I think the problem you have both... More complex than the Internal Revenue Code, and has fewer loopholes. I think what's important in both of these cases, ultimately, apart from the complexity, is that in neither circumstance is the defendant eligible for a leave, and therefore in neither circumstance does the complexity ultimately affect the defendant. I think it's important... I want to just discuss briefly the differences between this case and the last case on kind of the state of the record regarding the visa issue. Are you going to the plausible showing? Well, I guess that's right. I mean, as this Court indicated in Gonzalez-Valerio, where there's a bar on relief, the defendant has to show that that bar doesn't apply in order to show there's prejudice. So, I mean, I think ultimately, because of the visa bulletin issue, that's the simplest issue in this case. And if the defendant can't overcome that bar, then there is no entitlement to relief, period. And I think it's important to recognize that unlike the last case, this issue was raised in the district court in this case. The government's brief below at pages 23 to 25, the government cited the requirement the defendant comply with Section 245 and cited the requirements. In response to that, the defendant did not come forward with a visa, with any evidence that a visa was immediately available to him. The district court, although it didn't rule on prejudice, in a footnote it noted that suggests at least, and this is at ER 91, note 2, that it thought that the discussion on page 23 to 25 was persuasive, or at least that's the suggestion from the way it cited that wording. And I think it's important to recognize this issue was pointed out in the district court and the defendant did not come out with any evidence that he was eligible, which is defendant's burden. Again, this is something that bars him from relief. Now, I mean, there's a suggestion that, well, his parents could have become citizens. There's no evidence in the record that they ever have, that they've ever tried. I think what we're getting close to here is what was at issue in Gonzales-Valerio, which there there was a defendant who had a St. Cyr-related claim as to the conviction that was alleged in the notice of deportation, but he has since acquired another conviction which barred his relief under 212C. And the court indicated in considering that conviction that the defendant had to disprove that that was going to be a bar for him. But an issue that was raised regarding that, defendant had said in that case, well, he could have gone into state court because his sentence had only been 365 days. He said he could have gone into state court and got the sentence reduced by a day, and therefore it wouldn't have been an aggravated felony. And this court called that sheer speculation, which does not overcome the prejudice requirement. And that's the same thing that's being suggested here, simply saying, oh, well, someone could have become a citizen is sufficient to get you around the prejudice issue here. And there is no evidence the defendant was eligible for a visa bulletin at the time of his deportation, December 1997. All right. Now, but going backwards, do you agree that the defendant here has what you just call the St. Cyr claim? I disagree, actually, that this is a St. Cyr claim. I actually think in this case that the effect of ‑‑ actually, it's the ADPA that created the B bar in this case. And I think the effect of that statute on him had prospective effect and not retroactive effect. I mean, I think Landgraf, this court, excuse me, the Supreme Court indicated that when a statute has prospective effect, you really don't have the kind of retroactivity concerns. I think it's important to look at what happened when the ADPA was passed. At the time the ADPA became effective, this act did nothing to prevent the defendant to be eligible for 212H relief. If at any time after the act was passed he applied to adjust his status, he would have been eligible for 212H relief. That was the point of this court in Arrieta. It indicated that the bar on 212H relief in section 1228B does not bar everyone from 212H relief. It's only those in the expedited removal proceedings. So at the time this act was passed, if the defendant had come forward and filed an application for adjustment of status, he would have been eligible for 212H relief. But Arrieta created the bar, didn't it? I believe it's the ADPA that created the B bar in this case. When you say the bar, you mean the bar in the administrative removal. That's correct. The bar in the administrative proceeding that prevents him from being eligible for discretionary relief. Why doesn't that have a retroactive effect? Well, because it was what I think was... At the time of his conviction, he wasn't facing such a bar. I think what it's important to look at... Was it any different than St. Cyr? Well, I think what's important to look at in St. Cyr, it was the conviction itself that barred him from the relief. It's this aggravated felony conviction which made him ineligible for 212C relief. Here, it is not his conviction that triggers the expedited removal proceedings. It is his conviction that makes him deportable, but it's the fact that he's unlawfully in the United States at the time the INS institutes deportation proceedings against him that triggers expedited removal versus other removal. And so it's his illegal status in the United States that triggers whether he's eligible for 212H relief under the statutory scheme. And that is not... And then because he came back, that they instituted either, in this case, the administrative removal as opposed to reinstatement. Well, I disagree. And I think it's important to recognize in the last case, the defendant was an LPR and was dealing with it in that context. Here, the defendant was never a lawful permanent resident alien. He never had any right to be in the United States. He would have had to adjust his status to attain that right at some point. I mean, his argument was he could have done it during the deportation hearing besides his bar, but he had to do that at some point. It was the fact that he had never adjusted his status at any point that was triggered the expedited removal. Because the expedited... His conviction made him deportable. There's no dispute about that. But it was the unlawful status that put him in the expedited removal proceedings versus kind of the more traditional. So all you're saying is it's one step removed, right? That's all I'm asking. Yes. And as to him, it had prospective effect because if he had applied to change his status after the passage of the ADPA, he could have done so and got 212H relief. Can you distinguish... Are you familiar with this Leon Paz case? Yes, I am. Can you distinguish this case from Leon Paz in terms of the obligation of the agency? Well, I think it's important to recognize that Leon Paz initially was interpreting Velasco Medina, which in that case the defendant pled guilty. And ultimately, even though he pled guilty and was not deportable at the time he pled guilty, this court did not apply St. Cyr to him. It wasn't the guilty plea itself kind of in reliance on the lack of immigration consequences that triggered the St. Cyr inquiry. Now, there Leon Paz built on St. Cyr, excuse me, Velasco Medina. Velasco Medina was someone who at the time he pled guilty, the act had changed, and so 212C relief wasn't going to be available to him. But his conviction was not an aggravated felony at the time. So what the law, the change that dealt with there was that later his conviction became an aggravated felony and he had no expectation of 212C relief should that change have been made. Leon Paz was a step removed from that because the defendant had kind of the double protection, which Judge Fernandez wrote for the court, of not being an aggravated felon to begin with and then also having 212C relief available to him. Well, apply that to this case. What was his name? Gonzalez. Gonzalez. Was he an aggravated felon at the time of his conviction? Yes, he was. I mean, he became deportable at the time of his conviction. I mean, again, he's not eligible for 212C relief, obviously. Let me ask you this. Okay, so he was an aggravated felon subject to deportation with his conviction, but he was still eligible for 212H relief, right? Yes. At the time of his conviction. With the applying of adjustment status, yes. He only had one potential avenue of relief. That's right. Right? And so then after he serves his time, because he was an aggravated felon and because of the change in the law and because he's removed. Was he removed from the country? He wasn't removed. It's that he didn't clear up his unlawful status prior to the deportation proceedings. So he never left. But at all times, he never illegally entered. He never left. Okay, so when he was released, they're able to utilize this administrative removal process. That's true. Right? And when they're able to do that, then they can foreclose. He's foreclosed from seeking 212H relief. That's correct. Right? I don't know why that doesn't. I don't know why Leon Paz doesn't. Well, I think the important difference that I'm at least starting with on teaching. Help me understand why Leon Paz just, yeah. Well, I think it's first, again, that in the Leon Paz and 212C context, it's the conviction itself that renders the defendant ineligible. In the 212C context, an aggravated felony with the change in law is what makes the defendant ineligible for 212C relief. So it was the very conviction that the defendant pled guilty to that now made him ineligible. And he pled guilty in reliance on that conviction, allowing him to get 212C relief. Here, as I mentioned, it's not the conviction that triggers the expedited removal. And I think that that is a crucial difference when considering this issue. How is this worked out? But I don't know the bits. Why is it crucial? Well, I think in Landgraf, the Supreme Court indicated that one of the basis of retroactivity analysis is to give individuals notice that their conduct is unlawful and their ability to conform to it. And that's exactly what was at issue. That's exactly what the defendant had the opportunity to do here. At the time the AEDPA was passed, he knew. I mean, the suggestion is he pled guilty in reliance on 212H. Well, if he's, you know, he's aware of the regulations, he knew when the AEDPA was passed that if he still was illegal at the time of any immigration proceeding, he was going to be ineligible for any relief. And so he had the ability to apply. And that assumes that somebody, you know, that somebody could reasonably understand all of this. Well, I do think. It's ridiculous. But that's all on the basis of St. Cyr, isn't it? Yeah, and I think St. Cyr, it's important to, reasonable reliance was really a key in St. Cyr. I think it's important to recognize one other difference of 212C relief and 212H relief. 212C relief, if you serve too long of a sentence, you are barred from 212C relief. And that's what animated a lot of the discussion in St. Cyr. I've seen him out of time. Cases are complicated. In St. Cyr, a lot of what animated the discussion was that people pled guilty to preserve their 212C ability or their ability to file 212C relief because if they served too long of a sentence, they were going to be barred. In fact, the Supreme Court cited, it didn't cite St. Cyr himself as an example, but it cited another defendant, who that was the specific reason for pleading guilty, was to get a sentence under 5 years so that the defendant was eligible. So in that context, the reliance interest at stake is great. 212H does not have anything like that. By pleading guilty, he didn't help himself under 212H. In fact, just the opposite. By pleading guilty, he made himself deportable without any immigration benefit, which is contrary to what happens under 212C. In that context, he had the ability himself prospectively to get 212H relief despite his conviction, and that was through applying to a justice status. Now, of course, the government's position is he isn't eligible to do that, but it has to be one or the other. I mean, either he was eligible to a justice status, and therefore this had prospective effect on him, or he wasn't eligible to a justice status, and therefore there's no prejudice. I mean, it seems to me that that's the effect here because of the significant differences between 212C relief and 212H relief. Did he have a lawyer when he appeared before the matter came before the district court? In the 1326 case? Yes. He had the Federal Public Defender's Office representing him in the criminal case. I don't. No, I mean before. He was not given any hearing. I mean, he waived his right to any hearing. There was no hearing. You don't need a lawyer because you don't have a hearing. Exactly. I mean, that's kind of the point of expedited removal. He could have contested some things, but 212H was not one of them. I mean, he could have been contested, you know, I'm not this person. There's various things he could have contested, but, yes, he's not entitled to a hearing. He could have taken an appeal. Yes. Theoretically. Well, I think ultimately that inquiry winds up being more circular in this case because, I mean, if it doesn't have retroactive effect, then he was barred. He waived the hearing. Exactly. Well, I mean, I don't think there would have been a hearing. He waived his hearing. He waived his right to appeal. Yes, he didn't have the right to a hearing. What he waived was his right to appeal and to contest the other elements, but that doesn't mean a hearing. It just meant he waived the ability to contest various things. I think ultimately the notice issue is somewhat circular because, as I said, if it didn't have retroactive effect, then he is absolutely barred and nothing that would have happened had any effect in this case on him. I mean, you know, if it applies, then there is no relief available for him. I mean, he had no choice. You know, after he finished his term of imprisonment, he just went before this one individual, right? Well, that's where I respectfully disagree because I believe he could have filed, assuming he was eligible, he could have filed the adjustment of status before the immigration proceedings started and thereby. . . How do you know all this? Well, I mean, I think, again, this goes back to what St. Cyr was focused on. . . Let me ask you, do they have immigration treatises in the prison library? I can't answer that question. I'm sorry, I don't know the answer to that. I mean, I think a lot of what animated the St. Cyr discussion was that defense counsel advised aliens about immigration relief and, in fact, noted that a number of courts were required to advise aliens about the immigration consequences of their convictions at the time of the conviction. And, again, I think the St. Cyr analysis really focuses on . . . Do you have that here? There's no evidence that that happened. I mean, there's nothing in the record that suggests any of that happened. I'm just simply pointing out that what the court in St. Cyr was focusing on was that defendants were actually relying on the availability of immigration relief when they made the decision to plead guilty, and that's what made their reliance reasonable. Maybe, in some cases, aliens aren't . . . defendants aren't aware of those, but then you don't have the same kind of reasonable reliance interest or an interest in St. Cyr that it triggered. I mean, if he wasn't aware of 212H relief, then it's really hard to say he reasonably relied on that when he pled guilty. I mean, he just wouldn't have any reasonable reliance, and there wouldn't be a St. Cyr issue. But if he was aware of 212H relief, then he was aware of the changes to 212H relief that were rendered by the immigration law, and, therefore, he had the obligation to take . . . to apply for adjustment of status. He would have known he could have done that. So, I mean, I think, ultimately, there is no retroactivity problem in this case. I notice I've gone significantly over the time. If the . . . We like you. I'm happy to address prejudice if the panel would like me to. With that, the government submits. Your Honor, I know I went past my time. If I could just have one . . . Sure. Thank you. I just very briefly want to address the visa bulletin issue one more time. The question that's raised in this case, in this setting, was similarly raised in the Bowie decision. In the Bowie decision, Mr. Bowie was appealing his BIA decision to the Ninth Circuit. And in doing so, the issue was brought up that had he moved to a justice status, he didn't have an immediately available visa at that time. And that, in fact, he would have had to have applied in 1991 for him to have had the immediately available visa. And it's not clear from the case as to exactly when the immigration hearing takes place, but we know that the case made it to the Ninth Circuit in 1996, so I figure it was a couple of years there at least. But there, the Court said that what we're going to do is not look and speculate as to what the I.J. would have done, whether there would have been a continuance, whether there wouldn't. We're not going to go down some road that no other court has gone down before and make that determination here. And in the criminal context where we're seeing it on a 1326 appeal, that's all the more reason. I think the government indicated that the issue was raised below. Well, that's not altogether correct either. The issue was raised in the context of 245 in connection with 212H below, but it wasn't raised in the context that it's being raised here in terms of an immediately available visa. It was raised in the context of the vested rights issue that was briefed with respect to St. Cyr. And I think that there, without having said vested rights, and their explanation of St. Cyr in trying to distinguish Leon Paz from this case is still based on the vested rights issue, which was not the basis for the Court's decision in St. Cyr. The Court actually looked to see if a new disability attached to events that had already passed. And the Court clearly says that the applicable analysis is a common-sense functional analysis. And I think that's what Your Honors have taken in terms of how would he have been expected to know that this was going to happen. The other issue with St. Cyr is that St. Cyr did not impose a reliance requirement. It presumed one, but it did not require such of St. Cyr. In fact, Mr. St. Cyr, Enrico St. Cyr, did not have any showing of reliance at the time of his plea with respect to what would have occurred later. So I think that that's not correct either in terms of whether or not reliance is required. I think that when you look at January 1994, the date Mr. Gonzales pled guilty, and you ask yourself the change in law that occurred between that date and the date of his deportation, did that impose a new disability on him from what would have existed on the day of his conviction? And the answer is clear. Yes, it did. In fact, it imposed several new disabilities on him. The 1228 disability, the, I believe it's ERIRA, the B-5 disability, the disability of no longer potentially under regulations requiring the immigration officer to notify him of what relief he may have available to him prior to being deprived of a hearing. There are clear disabilities that come out of that. The last issue that I wanted to just very briefly touch on is the Arrieta decision. And Mr. Silber mentioned that Arrieta dealt with this issue. Arrieta did not deal with this issue. Arrieta was, the context in Arrieta was Mr. Arrieta could have been subjected to the expedited removal proceeding or an immigration proceeding. And the, unlike Mr. Gonzales, the immigration officers in Arrieta entitled him to a hearing. And we see the difference that came about when they did entitle him to a hearing, because at that point he was required to be notified of what relief he had available. And then we get into the same inquiry that we would have gotten into here had he been given that. In fact, the status of the law today is that the immigration officer can decide whether or not someone gets a hearing, whether to give them Road A or Road B. And if you're given Road B, all relief is cut off. And if you're given Road A, then all the rights that you may have had still exist. And that impairment that exists because of that law coming into effect is clear, and it surfaces in a major injustice to Mr. Gonzales. Thank you.
judges: Pregerson, Tashima, Paez